Wood *v.* Lester.

New trial denied.

[ALBANY GENERAL TERM, March 7, 1859. *Wright, Gould* and *Hogeboom,* Justices.]

---

## WOOD *vs.* LESTER and others.

A mortgage, given to secure the payment of the purchase-money of a farm, provided that the mortgagor should deliver all the wood he might cut upon the mortgaged premises, upon the line of the N. Y. Central rail road, at the place designated by the rail road company ; that the mortgagee should have a lien upon such wood, for the purchase money, until the same should be fully paid; and a similar lien upon the crops &c. ; that the mortgagee should have the right to demand and receive from the rail road company three dollars for every cord of wood so delivered; and that the mortgagor should from time to time, on the demand of the mortgagee, execute and de-

Wood *v.* Lester.

liver to him such chattel mortgage or mortgages as might be necessary to perfect and perpetuate the lien, until the purchase money should be fully paid, &c.

*Held* that this was a valid agreement; and although it could not take effect until the wood should be cut and severed from the freehold, yet it attached instantly, as the wood became personal property; and that it should be enforced against the mortgagor, and all persons claiming from and through him, with notice of the lien thus created. JOHNSON, J. dissented.

*Held also,* that a creditor of the mortgagor, who had notice of the prospective lien of the mortgagee upon the wood, before his rights attached by virtue of an execution issued upon a judgment subsequently recovered against the mortgagor, was not a bona fide purchaser, but took the wood subject to the prior equitable rights of the mortgagee.

That the agreement for the lien was neither a chattel mortgage nor a sale of chattels, because, at the time it was made, the subject matter of the lien was not in existence as personal property; and therefore was not affected by the statutes concerning sales and mortgages of chattels.

That the provision for executing a chattel mortgage, &c. on request, was, at most, cumulative, and did not at all qualify, or affect the validity of, the lien previously stipulated for.

That in respect to the grass or hay upon the premises, there being no evidence that the subsequent judgment creditor had any notice or knowledge of the mortgagee's lien thereon, before he purchased the same of the mortgagor, he must be deemed a bona fide purchaser thereof, and entitled to hold it, discharged of such lien.

APPEAL from a portion of a judgment entered at a special term. The action was brought to foreclose a mortgage. The complaint states that the defendant Melvin Power, on or about the 1st day of May, 1856, purchased of the plaintiff the premises therein described, for the consideration and price of $26,568.75. That $4000 of the purchase money was paid by Power, and on the day of the execution and delivery of the deed of the premises by the plaintiff, Power, in consideration thereof, and in order to secure the residue of the purchase money, with interest, on the day aforesaid executed and delivered to the plaintiff his bond, sealed with his seal, in the penalty of $45,000, conditioned to pay the plaintiff $22,568.75, and interest thereon, as follows: $13,568.75 and interest thereon in nine equal monthly installments, the first to be paid on the 6th day of June (then) next, and the rest on the 6th

Wood *v.* Lester.

of each succeeding month until the whole was paid; the interest on each installment to be paid therewith, and to be computed from the first day of April (then) last; $9000 and the interest thereon from the first day of April, to be paid as follows : the interest semi-annually, on the 1st of October and April in each year. $1000 of the principal to be paid on the first day of May (then) next, and $8000 on the 1st day of May which would be in the year 1864, with the privilege to said Power to pay $9000 at any time he might choose so to do sooner than above mentioned : and as collateral security for the payment of the said indebtedness, the said Melvin Power on the same day executed, duly acknowledged and delivered to the plaintiff a certain indenture of mortgage upon the premises sold by the plaintiff to him, being about 350 acres of land in the town of Farmington in the county of Ontario, describing the same particularly; conditioned to pay the sum of money mentioned in the condition of said bond in the manner and at the times therein specified; and the mortgage contained the following covenants in substance, viz : " The said Melvin Power covenanted and agreed with the plaintiff that he, said Power, would deliver, without unreasonable delay, all the wood he might cut from the premises above described, upon the line of the New York Central Rail Road Company, at the place designated by said company, and that he would saw and fit the same for use; that the plaintiff should have a lien upon all the said wood for the purchase money, until the payments in the first condition of said mortgage—the aforesaid monthly payments—should be fully paid; that the said plaintiff should have the right to demand and receive from the said rail road company the sum of $2.75 for each and every cord of wood so cut and delivered, when delivered and measured, and the further sum of 25 cents per cord as fast as the same should be sawed and ready for use; and that the said Melvin Power should, in any and every contract and agreement he might make with the said rail road company for the sale of said wood, provide for the payment to the party of the

second part, in said mortgage—the plaintiff in this action—of the sum of three dollars per cord for each and every cord of said wood in the proportion aforesaid, until the nine monthly installments were fully paid; and that the said plaintiff should also have a lien upon all the crops of every kind, upon said premises, and that the said Melvin Power should from time to time, on demand of the said plaintiff, execute and deliver to him such chattel mortgage or mortgages as might be necessary to secure and protect such lien and to perpetuate the same, until said nine monthly installments should have been fully paid, when such lien should cease and be discharged."

The complaint further alleged that said mortgage was given and the said condition inserted to secure the payment of a part of the purchase money of said premises, which was sold and conveyed by the plaintiff to said Melvin Power by deed bearing even date with said mortgage; and that said mortgage contained the usual power of sale in case of non-payment. That the mortgaged premises consist of farming land, are occupied as one farm, and are so situated that they cannot be sold in parcels without material injury, &c.; also that the mortgage was duly recorded on the 5th day of March, 1856. The complaint then alleges that Power has omitted to pay either of the monthly installments that became due on the 6th days of June, July, August, September, October and November, excepting that on the 23d day of July, 1856, there was paid to the plaintiff on the bond and mortgage the sum of $2211.06, the avails of a quantity of wood cut and taken from the premises; and on or about the 20th of October the plaintiff received a quantity of corn in the ear, corn stalks and pumpkins, that were raised on said premises, of the value of $27.22; and on the 1st day of November, 1856, the plaintiff received $310.50 in cash; and claiming that there was, at the commencement of the action, due the plaintiff on said bond and mortgage, the sum of $6799.06, and thereafter to become due thereon the further sums following, viz. (stating them and the times when due.) That after the execution of said bond

Wood *v.* Lester.

and mortgage, and after the mortgage was recorded, the defendant Lester took from the defendants Melvin Power and wife, a bond and a mortgage, covering the same premises, bearing date May 26th, 1856, to secure the payment of the sum of $60,000, &c. being a precedent debt, &c. On the 7th day of June, 1856, Lester perfected a judgment by confession against Power, for the amount of his bond and mortgage.

After default had been made in some of the payments on the plaintiff's mortgage, Power cut from the farm 600 cords of wood, part of which had been delivered at the rail road station, and the remainder was on the premises where it was cut, but no portion of it had been received or paid for by the company, and on the 7th July, 1856, Lester caused said wood to be levied on by virtue of an execution on said judgment, and claimed it free from any lien of the plaintiff. On the 28th day of June, 1856, Lester purchased of Power about 80 acres, and also an undivided half of about 40 acres of grass growing on said farm, and claimed to hold it under such purchase, free from the plaintiff's lien. The only consideration for the sale of the grass was the application and indorsement by Lester of $2712 upon Power's bond, held by him. Before Lester took his bond and mortgage, he had actual notice that the plaintiff was to have the avails or proceeds of the wood cut by Power from the farm, to apply on his mortgage. On the 28th day of October, 1856, and after the commencement of this action, the sheriff sold the wood by virtue of said execution, and the defendant Lester purchased the same at such sale.

The cause was tried at the Ontario special term, in February, 1857, before Mr. Justice JOHNSON, when the foregoing facts were proved or admitted, and a judgment of foreclosure and sale was ordered; but it was also adjudged that the title of Lester to the grass, hay and wood was superior to the claim of the plaintiff, and that Lester recover costs out of the proceeds of the sale. From that portion of the judgment which declares Lester's title to the grass, hay and grain superior to that of the plaintiff, the plaintiff appealed.

The following is the opinion of the court delivered at the special term :

JOHNSON, J. " The only question in respect to the plaintiff's rights arises upon his claim to a lien upon the cord wood and crops of Power, which he is seeking to enforce as against the defendant Lester, who claims as creditor and purchaser of Power.

The plaintiff's rights, whatever they may be, spring from the mortgage, which was taken for the express purpose of securing the purchase money, when the premises were sold and conveyed by him to the defendant Power. His lien is what the mortgage gives him, and nothing more ; it was secured by express contract. The mortgage was executed according to the agreement, and has been recorded, and the lien created thereby is a legal lien, and is the only one which the plaintiff has, or can enforce. The doctrine of an equitable lien in favor of the vendor, to secure the purchase price, has no application whatever to such a case. There is nothing left here for equity to imply. The mortgage is for the whole debt, and covers the whole premises, and the judgment and mortgage of the defendant Lester are confessedly subsequent in date and right. The equitable lien attaches where no mortgage is taken upon the land sold and conveyed ; or, where a mortgage is taken for a part of the purchase price only, it may attach to secure the payment of the residue.

It is insisted by the plaintiff's counsel that the mortgage covered the timber standing upon the premises when it was executed and delivered, and that equity would extend the lien, when the timber was severed from the soil, to the wood into which it was converted. However this might be if the severance was wrongful, in the nature of waste, the rule would not apply in a case like this. It is plain from the mortgage that the parties contemplated the conversion of the growing timber into cord wood by the mortgagor, and the plaintiff's right to the wood in that event was agreed upon, and rests in the cov-

enant in the mortgage. The covenant in substance is, that the plaintiff shall have a lien upon the cord wood cut from the timber to the extent of three dollars per cord, and also upon all the crops of every kind raised upon the farm, and that the mortgagor should, from time to time, on the demand of the plaintiff, execute and deliver to him such chattel mortgages as might be necessary to secure and perpetuate such lien until all the monthly payments should become due. A chattel mortgage upon personal property is a sale to the mortgagee, which vests the title, and it' is obvious that this is what the parties looked to for the plaintiff's security. The covenant, therefore, is a mere agreement for the sale of the personal property by way of mortgage, as additional security, at a future day, at the request of the plaintiff. It cannot operate as a personal mortgage, of itself, because it is apparent that the parties did not so intend it, inasmuch as the agreement is to give a chattel mortgage in future ; and if it could be construed into a chattel mortgage, it would be void as against the creditors of the mortgagor, having never been filed in the office of the town clerk, and also as a mortgage upon personal property, not then *in esse.* The plaintiff has failed to secure his lien or title to the wood, for aught that appears, by his own laches ; and the defendant Lester having perfected a judgment and secured a levy, has acquired a right superior to any which the plaintiff may have, as against Power, under his covenant in the mortgage. This disposes of the plaintiff's claim to the cord wood, levied upon under the defendant Lester's execution. As to the hay or grass conveyed by Power to Lester, there is no principle, that I am aware of, which would take that from the purchaser, and give it to the mortgagee of the real estate. As before remarked, he has acquired no title by his covenant in the mortgage, and it can scarcely be pretended that the equitable lien, even if it existed in favor of the vendor in such a case, would extend to emblements, or to the annual products of the soil, such as fruits, grass and the like, which could be taken without the commission of waste.

But if I am wrong in all this, and the equitable lien subsists in such a case, and extends to the annual products of the soil, which constitute in good part the rents and profits, the plaintiff would fail as to the grass or hay, because that was conveyed in satisfaction of a precedent debt, and without any notice to the purchaser of the plaintiff's specific claim upon it. The recording of the mortgage would not operate as a notice of such a claim, and there is no evidence otherwise to show that any other notice was given as to the grass, although it was given as to the wood. In *Bayley* v. *Greenleaf*, (7 *Wheat*. 44,) it was expressly held that a conveyance by a vendee to a creditor, in satisfaction of a debt, would defeat the equitable lien of the original vendor. The decision of Justice S. B. Strong, to the contrary, in *Hallock* v. *Smith*, (3 *Barb*. 267,) at special term, can scarcely be considered as of equal authority. An equitable lien is in the nature of a secret trust, which is not favored by our laws, and upon principle should not, I think, be favored against the claims of creditors. Chief Justice Marshall seems to have been decidedly of the opinion, in *Bayley* v. *Greenleaf*, that it could not be asserted at all, as against the lien of a subsequent judgment creditor or mortgagee. This question is also examined with admirable clearness and force in the notes to *White's Equity Cases*, (1 *Lead. Cases in Eq*. 247–251,) where all the authorities are cited, and the opinion of the chief justice sustained and enforced.

I shall place my decision, however, upon the ground that the plaintiff has no rights in this case beyond what are secured by the terms and conditions of the mortgage, and can only take what the instrument secures to him as a legal right, as against the defendant Lester.

The decree, therefore, can only be for the foreclosure of the mortgage and sale of the mortgaged premises, in the usual form and manner."

The appeal was argued by

*James C. Smith,* for the appellant.

*S. Mathews,* for the respondent.

WELLES, J.   The mortgage by Power to the plaintiff provided, in express terms, that the former should deliver without unreasonable delay all the wood he might cut upon the mortgaged premises upon the line of the New York Central rail road, at the place designated, &c. ; and that the plaintiff should have a lien upon all the said wood for the purchase money until the monthly installments should be fully paid, &c.   It also provided for a similar lien upon the crops, &c. ; and that Power should, from time to time, on demand of the plaintiff, execute and deliver to him such chattel mortgage or mortgages as might be necessary to protect and perpetuate the same, until the nine monthly installments should be fully paid, when the lien should cease and be discharged.   There was no necessity for the lien upon the wood until it was severed from the land, as until then it was parcel of the real estate, and the mortgage, without the provision referred to, by which the lien was provided for, would embrace it; and a court of equity, except for the provisions contained in the mortgage, by which the mortgagee consented to the cutting of the wood, would have had power to restrain the mortgagor and all others from cutting it.   The mortgagee, however, agreed to the wood being cut and sold to the rail road company; and in the same agreement, and as a part thereof, it was provided that he should have the lien upon all the wood so cut until the monthly payments should be made.   That was undoubtedly a valid agreement; and although it could not take effect until the wood should be cut and severed from the freehold, yet it would attach instantly, as the wood became personal property by being thus detached from the realty.   This, I think, was the essence and spirit of the agreement, and it should be enforced against the mortgagor and all others claiming from and through him, with notice of the

lien thus created. (*Field* v. *The Mayor &c. of New York*, 2 *Seld. R.* 179, *and authorities there cited.*)

The agreement for the lien was neither a chattel mortgage nor a sale of chattels, because, at the time it was made, the subject matter of the lien was not in existence as personal property, (*Edgell* v. *Hart*, 5 *Seld.* 213;) and therefore is not affected by the statutes concerning sales and mortgages of chattels. The case shows that the defendant Lester had notice of the prospective lien upon the wood before any of his rights attached, and he therefore was not a *bona fide* purchaser, but took the wood subject to the prior equitable right of the plaintiff.

The provision that the mortgagor should, at the request of the mortgagee, execute chattel mortgages, &c., if by fair interpretation it was intended to apply to the wood to be cut —as to which there may be some question—was, at most, cumulative, and did not, as it seems to me, at all qualify or affect the validity of the lien previously provided for. If the provision for the lien was valid and effectual without the one for the chattel mortgages, it was so with it. It was in the nature of a covenant for further assurance in a deed, which was never held to affect the other covenants or provisions contained in a conveyance.

I cannot agree with my learned brother, who decided this case at the special term, that the provisions in the mortgage respecting the liens, and the giving of chattel mortgages by Power to the plaintiff, was "a mere agreement for the sale of the personal property by way of mortgage, as an additional security at a future day, at the request of the plaintiff." By giving the provisions in question this restricted interpretation, it is necessary to lay out of view all that the parties have said in the agreement about the lien, and to treat as surplusage a very important provision, plainly expressed by them. This we have no right to do. It was a provision intended, as I think, to secure to the plaintiff a highly valuable right, without which he would have no security, as respected the wood and crops, except the agreement of the mortgagor to give the

chattel mortgages, and which, in case Power for any reason saw fit to violate it, by refusing to give the chattel mortgages, would leave the plaintiff at the mercy of Power and his creditors, so far as respected the wood and the crops, upon which the liens were to attach. It was competent for the parties to have made just such an agreement as the special term adjudged was made by them, if they had seen fit to do so—in which case it would have been quite unnecessary to insert the provision which they have inserted—that the plaintiff should have a lien upon all the wood and crops for the ·purchase money, until the payments in the first condition of the mortgage, the aforesaid monthly payments, should be fully paid; but I think they have in fact made quite a different one, as is entirely plain from the language employed by them, and that is just what they have expressed. It is, first, that the plaintiff should have a lien upon the wood upon its being converted into personal property by severance from the land; and second, and in addition thereto, that Power should execute the chattel mortgages, at the plaintiff's request, whenever it should become necessary to protect and perpetuate such lien.

As to the grass or hay in question, there is no evidence that the defendant Lester had any notice or knowledge of the plaintiff's lien thereon before he purchased the same of Power. He must, therefore, be deemed a *bona fide* purchaser thereof, and permitted to hold it, discharged of the plaintiff's lien thereon. (*Bayley* v. *Greenleaf,* 7 *Wheat.* 46.)

My opinion, therefore, is, that the judgment should be so modified as to direct the defendant Lester to account for the wood taken by him, with interest from the time of the levy thereon; and that neither party recover costs of this appeal.

SMITH, J., concurred.

JOHNSON, J., adhered to the views expressed in his opinion at the special term.

Judgment modified.

[MONROE GENERAL TERM, March 7, 1859. *Welles, Smith* and *Johnson,* Justices.]