Rumsey, J.
This case, with five others, is an appeal from a judgment rendered by a justice of the peace, and it has been certified into this court. The facts are quite simple. In November, 1886, one Teeter rented of Ella M. Tucker a farm, by lease to begin March 1, 1887. At the time of making the lease Teeter owed Mrs. Tucker $505. To secure this sum he gave her a chattel mortgage upon all of his share of grain, potatoes, straw, hay and stock that is growing or to be sowed or grown on the farm which he had leased.
*36 The debt to secure which the mortgage was made was due in part January, 1889. Tucker went into possession of the farm under his lease in March, 1887, and in proper time that spring he sowed buckwheat and planted potatoes. He cut the grass growing upon the farm as it became fit. Afterwards and in the fall of 1887 Teeter sold to Larrowe eighty-four bushels of the buckwheat, which Mr. Larrowe made into flour and sold. The chattel mortgage was afterwards sold to the plaintiffs, who sued Larrowe for the conversion of the buckwheat. The point is made by Larrowe in this appeal, which he takes from the judgment against him in that action, that the grain had no existence and had not even been sown when this mortgage was made, and, therefore, the mortgage was void. The fact is, that not only was the grain not in existence, but the term of the lessee, Teeter, bad not begun, when he made this mortgage. The mortgage was not made to secure the rent, but a debt which had no connection with the rent.
In examining the point raised by defendant, it is to be remembered that the action was originally brought in a justice’s court, and, therefore, no equities of the parties' can be regarded or protected, Cressey v. Sabre, 17 Hun, 120.
The single question is, what are the legal rights of the parties.
The rule at law with regard to the validity of chattel mortgages is well settled that such a mortgage can operate only on property actually in existence at the time of giving the mortgage and then belonging to the mortgagor, or potentially belonging to him as an incident to other property of his then in existence. If he does not own the goods mortgaged, or if they do not potentially exist, the mortgage is void at law. Brunswick, etc., Co., v. Stevenson, 21 St. Rep., 862.
Property is said to belong to one “ potentially ” when it is the ordinary increase or growth of other property which he has, as fruit or grass from his farm, or milk from his cow, or wool from his sheep. Conderman v. Smith, 41 Barb., 404; Farmers' Loan & T. Co., v. Long Br Imp. Co., 27 Hun, 89.
In this case Teeter, when the mortgage in question was made, had not sowed the buckwheat. Indeed, he did not sow it until June, 1887. So far as crops subsequently put in are concerned, the case is like that of Cressy v. Sabre, 17 Hun, 120, and within the rule of that case the judgment against Larrowe must be reversed. Milliman v. Neher, 20 Barb., 37; Williams v. Briggs, 16 A. L. J., 387; 22 Am., 653 note.
But the plaintiffs claim that the case of Cressey v. Sabre has been overruled by the later case of Smith v. Taber, 46 Hun, 313; 14 St. Rep., 644. That case, however, does not overrule Gressey v. Sabre, but the opinion expressly says that the two cases are not alike. In Smith v. Taber the tenant, under whom the purchaser claimed, had agreed in the lease that the plaintiff, who was his landlord, should have a lien upon the title to all the crops to secure the rent, and that fact is relied upon by the court to take the case out of the rule of Cressey v. Sabre. But that is not the state of affairs here. The mortgage to Mrs. Tucker had nothing to do *37 with the rent, but was entirely a separate matter. Had the lease under which Teeter took the right to put in the crops provided that the title to them, should vest in the landlord, and had the plaintiffs claimed under that contract, a different question would have been presented and the case would have been within Smith v. Taber. But that state of affairs is distinguished by the court in Cressey v. Sabre. In those cases the right of the landlord to the crops is not put upon the ground that the provision in the lease operates as a chattel mortgage, but that the crop becomes the property of the landlord as soon as it begins to exist by virtue of the contract which brings it into being, Andrew v. Newcomb, 32 N. Y., 417, 419, and the tenant never had any title to it. Such is clearly the ground upon which the court puts the decision in the case of Smith v. Taber in distinguishing it from Cressey v. Sabre. But that is not the case here, for when the crop was sowed it belonged to Teeter, and his mortgage was void because it was given before the property had come into existence. These considerations control also the case of Herbert, so far as the plaintiffs were allowed to recover for the potatoes planted by Teeter. But the rye bought by him presents a different state of facts. That was put in by Mrs. Tucker before the lease of Teeter, and it belonged to her, and it passed to plaintiffs by the chattel mortgage made by her, which was duly filed. As to the rye the judgment against Herbert must be affirmed.
Besides the two cases against Larrowe and Herbert, spoken of above, the plaintiffs recovered four other judgments for hay which had been cut by Teeter, in the summer of 1887, on this farm, and had been by him sold to the several defendants against whom the judgments were recovered. Hone of these defendants are shown to be purchasers of the hay in good faith for value paid at the time, and, therefore, the only question presented is whether the hay, which was cut in the summer of 1887, was intended to be covered by the mortgage which Teeter gave to Mrs. Tucker. As we have seen, the hay, which was made from grass growing upon that farm, was potentially the property of the person owning the farm, and it might have been mortgaged as the property of such owner in the fall of 1886. The question, then, is whether Teeter was such owner in the fall of 1886. The lease was dated Hovember 20, 1886, which was the date of the mortgage, and it took effect on the 1st day of March, 1887. Between the date of the lease and the 1st day of March, 1887, Teeter had an interest in the term, as it is called. Young v. Dake, 5 N. Y., 463, 467; Leake on Real Prop., 314.
Such an interest, however, is a right and not an estate in the land, notwithstanding such right is in the lessor. Doe v. Walker, 5 B. & C., 111.
The estate of the lessee continues during the term granted, and that term does not begin until the time at which the lessee has the right to go into possession. Until that time, therefore, the lessee Teeter was not, in any sense, the owner of the farm. How, as we have seen, one can be said to be the potential owner of property only when he is the actual owner of other property, of *38 which the potentially owned property is a natural incident of growth. In this case, while the hay was the natural incident of the farm, Teeter had no interest in the farm when he made the mortgage, and, therefore, was not the potential owner of the hay. For that reason he did not, by his mortgage, create a lien on the hay.
D. M. Darrin, for app’lts ; O. S. Searl, for resp’t.
But the plaintiffs claim not only under a mortgage made by Teeter, but also under one made by Mrs. Tucker, in November, 1886. She was then the owner and in possession of,the farm. A mortgage made by her on the grass growing on the farm, which should thereafter be made into hay, if properly filed, was good as to third parties, whatever may have beén its effect upon the rights of Teeter, or however it may have made her liable to Teeter upon her implied covenant for quiet enjoyment.
It follows that the plaintiffs claim the hay under the chattel mortgage of Mrs. Tucker.
Judgment appealed from affirmed, with costs, on opinion of Rumsey, J., and on authority of Rochester Distilling Co. v. Razy, 48 St. Rep., 301.
Dwight, P. J., Macomber and Lewis JJ., concur.